UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| R.A. SESSION, II<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>4D MOLECULAR THERAPEUTICS INC,<br><br>　　　　Defendant. | Case No. 20-cv-05407-LB<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: ECF No. 17 |

## INTRODUCTION

The plaintiff, R.A. Session, worked for the defendant, 4D Molecular Therapeutics Inc., as a chief business officer and (later) as a consultant, and he sued 4D for allegedly not honoring stock options promised in a separation contract that memorialized a consulting arrangement. He claimed breach of contract and fraud and asked for declaratory relief.[1] 4D countersued for breach of the parties' underlying employment contract, which preceded the separation agreement and prohibited certain outside activities. 4D also alleged fraud.[2] Mr. Session moved to dismiss the counterclaims under Federal Rule of Procedure 12(b)(6) on the grounds that (1) the separation contract

---

[1] Compl. – ECF No. 2. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Counterclaims – ECF No. 9.

ORDER – No. 20-cv-05407-LB

superseded the earlier employment contract and the economic-loss rule prohibits the fraud claims, and (2) 4D did not plead fraud with particularity under Rule 9(b). The court grants the motion.

**STATEMENT**

In June 2018, 4D — a company that develops gene therapies to address genetic diseases — hired Mr. Session (based in Dallas, Texas) to be its chief business officer and head of corporate strategy, with (pursuant to an employment agreement) a base salary of $334,800, a discretionary 40-percent bonus, a bonus of $200,000 for closing a qualified financing, and stock options.[3] As to the stock options, under the employment agreement and another grant to Mr. Session, Mr. Session had the option to buy 286,516 shares of 4D common stock (about two to three percent of the company).[4] For reasons involving Mr. Session's outside activities, the parties ended their employment relationship and — on February 12, 2019 — replaced the employment agreement with a consulting agreement retaining Mr. Session as a strategy advisor with compensation in the form of a monthly payment of $10,000 and 140,000 in stock options vesting over four years (subject to the approval of the options grant by 4D's board of directors). The agreement also defined what happened if 4D terminated the consulting agreement. For example, 35,000 shares would vest if 4D terminated the agreement before August 1, 2019, and, if 4D terminated the agreement within the first year, Mr. Session would receive a final payment of $30,000.[5] In September 2019, allegedly because of 4D's contemplated initial public offering and not because of any employment issues, 4D ended the consulting agreement.[6] 4D also informed Mr. Session that its board of directors never approved 140,000 in options and approved only 35,000 in options,

---

[3] Compl. – ECF No. 2 at 3 (¶ 9); Counterclaims – ECF No. 9 at 11 (¶ 85); Offer Letter, Ex. A to Counterclaims – ECF No. 9-1 at 1–2. The court considers the parties' contracts (attached to the complaint and submitted in support of the motion to dismiss). *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4] Compl. – ECF No. 2 at 3 (¶ 9).

[5] *Id*. at 5 (¶ 16); Consultant Agreement, Ex. C to Counterclaims – ECF No. 9-3 at 2 (§ 4(c)), 7.

[6] Compl. – ECF No. 2 at 6 (¶ 19).

resulting in (according to 4D) an entitlement to about 5,000 options under the vesting schedule.[7] Mr. Session then sued to recover the full stock options.

4D countersued for breach of the underlying employment contract, generally on the ground that Mr. Session could not engage in outside employment or business activities related to 4D's business, but he did so by working as an advisor for other companies. 4D also claims fraud.[8]

The parties are diverse, and the amount in controversy exceeds $75,000.[9] 28 U.S.C. § 1332. Mr. Session moved to dismiss the counterclaims.[10] The parties consented to the court's jurisdiction.[11] The court held a hearing on December 1, 2020.

.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a

---

[7] *Id*. at 7–8 (¶¶ 23–24).

[8] Employment Agreement, Ex. B to Counterclaims – ECF No. 9-2 at 5; Counterclaims – ECF No. 9 at 12 (¶ 89), 14–17 (¶¶ 99–125).

[9] Notice of Removal – ECF No. 1 at 2–4 (¶¶ 4–10).

[10] Mot. – ECF No. 17.

[11] Consents – ECF No. 30, 31.

ORDER – No. 20-cv-05407-LB          3

1   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

2   unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

3   merely consistent with a defendant's liability, it stops short of the line between possibility and

4   plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

5       Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . .,

6   a party must state with particularity the circumstances constituting fraud. . . . Malice, intent,

7   knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

8   9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when,

9   where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106

10  (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule

11  9(b) is that defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 646 F.

12  App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough

13  to give defendants notice of the particular misconduct . . . so that they can defend against the

14  charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v.

15  Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the

16  defendant can prepare an adequate answer").

17      If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

18  possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*,

19  848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

22      The court dismisses the counterclaims because the consultant agreement supersedes the

23  underlying employment contract, the economic-loss doctrine in any event bars the tort

24  counterclaims, and 4D did not plead fraud with particularity or damages or injury.

First, for the reasons stated on the record, the new agreement superseded the underlying employment contract.[12] *Wise v. Pena*, 552 S.W.2d 196, 199–200 (Tex. Ct. App. 1977); *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1186 (2006). 4D's arguments about the effect of the new agreement's release provisions do not alter the outcome.

Second, any claims sound in contract, and the economic-loss rule bars recovery in tort. *Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, No. 3:13-CV-4136-P, 2016 WL 7680527, at *4 (N.D. Tex. 2016); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). The facts here do not plausibly plead (for example) fraudulent inducement to a contract that might allow an extracontractual recovery in tort. *Cf. Wright v. Charles Schwab & Co.*, No. 20-5281-LB, 2020 WL 6822887, at *3–4 (N.D. Cal. Nov. 20, 2020).

Third, 4D did not plead fraud with particularity. 4D does not identify the specific statements that Mr. Session made or give any context about why the statements were fraudulent misrepresentations. This is insufficient under Rule 9(b). *See, e.g.*, *Beard v. Int'l Bus. Machs. Corp.*, No. C 18-06783-WHA, 2019 WL 1516592 at *5 (N.D. Cal. Apr. 7, 2019). For the reasons stated on the record, 4D's argument — that facts about fraud are known only to Mr. Session — does not change this outcome.

## CONCLUSION

The court dismisses the counterclaims with leave to amend (and suggests waiting until after the parties' contemplated settlement conference). This disposes of ECF No. 17.

**IT IS SO ORDERED.**

Dated: December 2, 2020

LAUREL BEELER
United States Magistrate Judge

---

[12] The parties cited Texas law in their motions because the case was filed in Texas originally. The contract has California choice-of-law and venue provisions, which is why the district court in Texas transferred the case here. Order – ECF Nos. 24 at 3–5; Employment Agreement, Ex. B to Counterclaims – ECF No. 9-2 at 8 (§ 11(c)); Consultant Agreement, Ex. C to Counterclaims – ECF 9-3 at 6 (§ 10). The court invited the parties to submit California authority to support their positions. Order – ECF No. 48. They did not. Stipulation – ECF No. 49. The court cites California and Texas standards. The result is the same under either standard, as counsel agreed at the hearing.